# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DONALD OKADA,

    Plaintiff,

v.

NEVADA PROPERTY 1, LLC,

    Defendant.

Case No. 2:14-cv-01601-LDG (NJK)

**ORDER**

      Nevada Property 1, LLC (NP1) moves to compel (#39) Donald Okada to arbitrate the claims he has brought against NP1, pursuant to an arbitration clause in the Condominium Unit Purchase and Sale Agreement (Purchase Agreement) that Okada entered into with 3700 Associates, NP1's predecessor-in-interest.  Okada opposes the motion (#47), arguing that (1) NP1 waived any right it had to arbitrate Okada's claims; (2) the arbitration agreement is unconscionable; and (3) Okada's claims are beyond the scope of the arbitration agreement.  The Court has read the pleadings, papers, exhibits and documents filed by the parties, and has considered the parties' arguments, and will grant NP1's motion to compel arbitration.

Waiver

Arbitration agreements are valid, irrevocable and enforceable, but are subject to defenses that exist at law or under equity that apply towards the revocation of any contract. 9 U.S.C. § 2. Waiver of a contractual right to arbitration is not favored and the party seeking to argue that waiver exists bears a heavy burden of proof. *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986).  "[T]hree factors must be met for a party to waive its right to arbitration: (1) the party must know of an existing right to compel arbitration; (2) the party must engage in acts inconsistent with that right; and (3) the party opposing arbitration must suffer prejudice as a result of the inconsistent acts." *Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1012 (9th Cir. 2005).

NP1 concedes that it had knowledge of its right to compel arbitration.  Okada previously filed a complaint against NP1 in state court against NP1.  NP1 responded by moving to compel Okada to arbitration, relying upon the same arbitration agreement at issue in this matter.  (That motion was not decided, as Okada voluntarily dismissed his complaint.)  NP1 subsequently filed a Demand for Arbitration against Okada.  Okada responded by filing a counterclaim in the arbitration proceedings initiated by NP1.  Ultimately, an arbitration award was entered in favor of NP1, and confirmed by the state court.

Okada argues that NP1 acted inconsistent with its right to arbitrate his claims by moving to dismiss those claims (a motion which was granted in part and denied in part), and subsequently moving to dismiss Okada's amended complaint (a motion also granted in part and denied in part).  None of the decisions cited by Okada suggest that NP1's decision to first seek dismissal of Okada's claims rises to the level of an act inconsistent with its right to arbitrate the claims.  In *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 934 (9th Cir.2011), the court held this element satisfied on its finding that the parties had "consistently refused to arbitrate claims against them. . . ." In *Gutierrez v. Wells Fargo*

*Bank*, 704 F.3d 712 (9th Cir. 2012), the Ninth Circuit did not fully address whether the party seeking arbitration had acted inconsistent with its right to arbitrate, noting the case presented unusual, specific circumstances. Nevertheless, the court determined that compelling arbitration–after five years of litigation, including bench trial and a pending appeal--would not be appropriate as a result of the severe prejudice to the non-moving party and the waste of judicial resources. In *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 758 (9th Cir.1988), the party seeking arbitration had actively litigated the entire matter—including pleadings, motions, and approving a pre-trial conference order—for more than two years. In the present matter, Okada filed this action in California and NP1 filed its motion to compel arbitration only seven months later. In the interim, NP1 moved to dismiss or, in the alternative, to transfer venue pursuant to a choice of venue provision in the Purchase Agreement. The district court granted in part the motion to dismiss, and Okada filed an amended complaint. NP1 again moved to dismiss the claims or, in the alternative, to transfer venue. Again, the district court granted in part the motion to dismiss. The court also granted the motion to transfer venue. Upon the transfer of the case to this district, NP1 promptly moved to compel arbitration. NP1's efforts limited to obtaining a judicial determination whether Okada had sufficiently alleged any claims against NP1 was not inconsistent with its right to compel arbitration of sufficiently alleged claims. Accordingly, the Court finds that NP1 has not waived any right it has to arbitrate Okada's claims.

<u>Unconscionability</u>

"It is well-established that unconscionability is a generally applicable contract defense, which may render an arbitration provision unenforceable." *Shroyer v. New Cingular Wireless Services, Inc.*, 498 F.3d 976, 981 (9th Cir. 2007). Under Nevada law, courts may invalidate arbitration provisions when both procedural unconscionability and

substantive unconscionability are present. *D.R. Horton v. Green*, 120 Nev. 549, 553 (2004). Unconscionability is determined on a sliding scale; less evidence of one form of unconscionability is required in cases involving more evidence of the other form of unconscionability. *Id.* at 553-54.

Procedural unconscionability exists when a party lacks a meaningful opportunity to agree to arbitration clause terms either because of unequal bargaining power, as in an adhesion contract, or because the clause and its effects are not readily ascertainable upon a review of the contract. *D.R. Horton*, 120 Nev. at 554; *Gonski v. Second Judicial Dist. Court of State ex rel. Washoe*, 245 P.3d 1164, 1170 (Nev. 2010).

Okada argues that the Purchase Agreement is "a classic example of an adhesion contract." He asserts, by declaration, that he attempted to re-negotiate several terms of the Purchase Agreement, that 3700 Associates refused to negotiate any term of the agreement, and instead informed him that if he didn't like any term of the contract he should walk away.

As noted in *Obstetrics and Gynecologists, et al. v. Pepper*, 101 Nev.105, 107, 693 P.3d 1259, 1260 (1985), "[a]n adhesion contract has been defined as a standardized contract form offered to consumers of goods and services on a 'take it or leave it' basis . . ." Id. *Pepper* dealt with a health clinic's requirement that its patients sign an arbitration agreement before receiving treatment. *Id.* at 106, 693 P.3d at 1259. Significant to the court's findings was the fact that a patient would be denied medical treatment if she refused to sign the agreement. *Id.* at 107, 693 P.3d at 1260. A contract of adhesion is defined, in Black's Law Dictionary, as a "standard-form prepared by one party, to be signed by the party in a weaker position, [usually] a consumer, who adheres to the contract with little choice about the terms."

Even accepting Okada's statement that 3700 Associates would not negotiate any terms of the Purchase Agreement, the Purchase Agreement does not represent a classic

1  example of an adhesion contract.  As alleged by Okada in his complaint, he purchased a
2  condominium in a project marketed as offering "ultra-luxurious accommodations for wealthy
3  individuals," which he "specifically wanted for business purposes."  As Okada further
4  acknowledges in his opposition, he "had the opportunity to review the purchase contract
5  with an attorney prior to signing. . . ."  The Purchase Agreement specifically provided that
6  "[n]otwithstanding that this Agreement was prepared by one party hereto, it shall not be
7  construed more strongly against or more favorably for either party; it being known that both
8  parties have had equal bargaining power, have been represented (or have had the
9  opportunity to be represented) by their own independent counsel and have equal business
10 acumen . . . ."  Okada did not suffer from a lack of a "meaningful opportunity to agree" to
11 the arbitration agreement.

12         The Court also finds that the clause and its effects were readily ascertainable upon
13 a review of the contract. While the presentation of the arbitration clause–its typeface and
14 placement–within the Purchase Agreement is not particularly conspicuous, neither is it
15 particularly inconspicuous.  The arbitration clause was immediately preceded by the
16 underlined word "<u>Arbitration</u>."  The typeface of the entire paragraph is in the same font and
17 size as the remainder of the contract.  Given that Okada was presented with an opportunity
18 to review the entire contract with an attorney prior to signing, the presentation of the clause
19 cannot be described as suggesting an effort to escape notice or review and is not evidence
20 of procedural unconscionability.

21         As the arbitration clause is not procedurally unconscionable, the Court need not
22 address whether the clause is substantively unconscionable.  However, even assuming
23 that Okada has shown some slight evidence that the clause is procedurally
24 unconscionable, he has not shown sufficient evidence of substantive unconscionability to
25 render the clause unenforceable.

26

Okada's Claims

Okada argues that his claims are not subject to arbitration.  "[A] party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration."  *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 945 (1995).  Though the purchase agreement itself is governed by Nevada law, federal law applies to the Court's determination of the scope of the arbitration clause because NP1 brought its motion to compel arbitration pursuant to the Federal Arbitration Act and because there is no specific language in the arbitration clause regarding the choice of law in determining the arbitrability of a dispute.  *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 921 (9th Cir. 2011); *Mediterranean Enterprises, Inc. v. Ssangyong Corp*., 708 F.2d 1458, 1463 (9th Cir. 1983).  The arbitration clause in the purchase contract states that the parties agreed to arbitrate "any dispute related to this Agreement."  (Purchase Contract at page 12, § 24.10.)  As a general rule, any doubts about the scope of an arbitration agreement should be resolved in favor of arbitration.  *Cape Flattery*, 647 F.3d at 922-23.  Moreover, the use of the "related to" language indicates an intent by the parties to have a broad arbitration provision instead of a narrow arbitration provision.  *Id.* at 922.

Okada argues, however, that the the Ninth Circuit reaffirmed in *Cape Flattery* that when a tort claim constitutes an "independent wrong" from a breach of the contract featuring the arbitration clause, then that tort claim is not arbitrable.  *Id.* at 924.  At issue in *Cape Flattery,* however, was an arbitration agreement limited to covering disputes "arising under" the agreement.  As Okada apparently recognizes, the Ninth Circuit distinguished this language as requiring a narrow interpretation, as contrasted with agreements to arbitrate disputes "related to" the agreement, indicating a broad arbitration provision.  Thus, as recognized in *Cape Flattery*, because the dispute did not require interpretation of the agreement, it was not arbitrable pursuant to an "arising under" the arbitration clause.  In the present matter, the arbitration clause applies to "any dispute related to" the agreement.

To paraphrase the decision of the Central District of California to transfer this matter to this district pursuant to the Purchase Agreements venue selection clause: "Given the broad language used in Mr. Okada's purchase agreement, his tort claims are subject to the [arbitration] clause. Although the claims are not breach of contract claims, they do "arise out of" [and are related to] the contract.  All of the damages claimed by Mr. Okada result from the purchase agreement."  Accordingly,

THE COURT **ORDERS** that Nevada Property 1, LLC's Motion to Compel Arbitration (#39) is GRANTED.

THE COURT FURTHER **ORDERS** that the parties shall promptly submit this matter to binding arbitration in accordance with the Paragraph 24.10 Arbitration provisions of the Condominium Unit Purchase and Sale Agreement, and that this matter shall henceforth proceed by arbitration.

THE COURT FURTHER **ORDERS** that this case shall be stayed pending the conclusion of the binding arbitration proceedings.

THE COURT FURTHER **ORDERS** that the parties shall submit a joint status report every 120 days regarding the progress of the arbitration proceedings.

DATED this ___16___ day of September, 2015.

_____
Lloyd D. George
United States District Judge